By SKEEL, J.
Dissenting.
Plaintiff appellant was a passenger in a taxicab of the defendant, The Yellow Cab Company. The plaintiff and her escort had entered the taxicab at East 18th -& Chester Avenue about 4:00 A. M. The taxicab proceeded south on East 18th Street to Euclid Avenue and was going to make a left hand turn to go east on Euclid Avenue.
The intersection of Euclid Avenue and East 18th Street is controlled by a traffic signal light. It is conceded that as the cab entered the intersection the light was green or “go” for 18th Street traffic, and red or “stop” for Euclid Avenue traffic. As the cab pulled into the intersection, swinging to the right in preparation for making an outside left turn, as then required by the city ordinances of Cleveland, the defendant, Montgomery, was driving his automobile west on Euclid Avenue and approaching the 18th Street intersection at a high rate of speed. Montgomery passed to the left of the safety zone located just to the east of East 18th Street on the north side of Euclid Avenue and crashed into the rear of the taxicab and as a result of the collision the plaintiff was injured. Whether the cab was struck as it was pulling into the intersection, or as claimed by the defendant, The Yellow Cab Company, had stopped in the devil strip and partly in the eastbound street car track and, on the approach of the Montgomery car, attempted to move forward to avoid the collision, is a disputed question upon which the evidence is in conflict.
The defendant, Montgomery, did not file an answer and by the undisputed facts as to his conduct, there can be no question but that he was negligent and that his negligence was a proximate cause of plaintiff’s injurv, leaving, insofar as he was concerned, only the ques *497 tion of determining the amount of plaintiff’s damage.
As to the defendant, The Yellow Cab Company, the court overruled its motion for judgment at the conclusion of the presentation of plaintiff’s evidence, and, at the conclusion of the presentation of all of the evidence, the same ruling was entered on its motion for a directed verdict and the case submitted to the jury.
A verdict was returned against both defendants whereupon the defendant, The Yellow Cab Company, filed a motion for a new trial and also a motion for judgment notwithstanding the verdict.
The court overruled the motion for new trial and granted the motion for judgment. It is plaintiff appellant’s contention in this proceeding that the court erred in granting such motion and entering judgment for defendant, The Yellow Cab Company, notwithstanding the verdict of the jury.
The court in granting the motion non obstante verdicto did so on the authority of the case of Morris v Bloomgren, 127 Oh St 147. The trial court in its opinion, in referring to the rule of the Bloomgren case supra, said:
“That case distinctly and positively holds that the law confers upon a vehicle having the right of way an absolute right, qualified only by the provision that he must be proceeding in a lawful manner. The court said that such driver is not charged with the obligations cf duty arising out of the common law, namely, that of using ordinany care, (highest degree of care).”
In other words, the court held that defendant when driving its vehicle in a lawful manner and under such circumstances as by the rules of the road is afforded the right of way over all other vehicles approaching the course of such vehicle from other directions, is relieved of the common law duty of exercising the highest degree of care consistent with the practical operation of its vehicle as a public carrier, toward its passengers, to avoid collision with any other vehicle that might unlawfully interfere with such right of way. Such, a rule goes far beyond the holding of the supreme court in the case of Morris v Bloomgren, supra.
On page 158 of the opinion the court says:
“We have already stated that the driver of a lawfully driven vehicle approaching the right had the right to assume that the operator of the vehicle approaching from the left would obey the law and yield him the right of way. However, if such operator disobeyed the law, and failed or refused to yield the right of way to the vehicle that possessed it, a situation might arise whereby an obligation of care would arise upon the part of the driver having the right of way. If he should discover just as he was approaching or entering the intersection, that the driver of the vehicle on his left was violating the law, and was not yielding to him the right of way, it then became the duty of the driver lawfully having the right of way not to wantonly injure the other, bub to use ordinary care to avoid injuring him, after discovering and appreciating the dangerous peril in which the negligent driver had placed himself.”
It must be conceded that as between the operators of the two vehicles attempting to cross over an intersection from different directions, the one which is accorded the right of way over the other by statute should be-accorded the full benefit of such right. The question under these circumstances as to *498 which vehicle arrived at the intersection first, is unimportant, and, so long as the vehicle having the dominant right proceeds in a lawful manner, his preferential right continues. The doctrine of Heidle v Baldwin, 118 Oh St 375 and Geo. Ast Candy Co. v Kling, 121 Oh St 362, is overruled and aS between the drivers of the respective vehicles the absolute right of way in favor of the one given that preference by statute is established, so long as he proceeds in a lawful manner.
The doctrine of the case of Morris v Bloomgren supra, should not be extended however beyond the rights of the drivers of the vehicles involved, and not to include circumstances where to proceed even with the right of way would, to the knowledge of the driver in all reasonable probability cause injury to another that could thus be avoided by the use of ordinary care.
In the case of Horwitz v Eurove, 129 Oh St 8, the court had under consideration a city ordinance which gave the right of way at all street intersections to pedestrians. The plaintiff was crossing Burnet Street in the City of Cincinnati. He was crossing at a crosswalk. Bur-net Street ran north and south and the plaintiff was crossing from east, to west. The plaintiff saw a street car approaching from the north as he crossed over but did not see the defendant’s automobile. He was struck by defendant’s automobile which it was claimed passed the street ear just before the plaintiff reached the west curb. The trial court in submitting the case to the jury charged as follows:
“I charge you that it was the duty of the plaintiff while crossing Burnet Avenue to exercise ordinary care and if you find that the plaintiff failed to do so and that the failure so to do was the direct cause or a direct contributing cause, then your verdict must be for the defendant.”
The question thus presented to‘ the court’s consideration was as to whether or not the pedestrian having by ordinance been afforded the right of way is “absolved from the duty of exercising ordinary care for his own safety.”
The court, in concluding that even though the plaintiff had been afforded the right of way was still bound to exercise ordinary care for his own safety, said in the last sentence of the syllabus:
“* * * Such pedestrian is still under the legal duty to exercise ordinary care for his own safety; and whether he has done so in a particular case is a jury question, where the evidence is conflicting.”
In the case of Martinovich v Jones, 135 Oh St 137 the supreme court had before it a situation where a pedestrian had entered a street intersection with the green traffic signal. The defendant’s automobile, in charge of its agent, was standing at the crosswalk on the intersecting street. As the plaintiff continued across the intersection the light changed and the defendant’s servant started the automobile in motion with the green light then in his favor, thereby striking the plaintiff. It is true that the facts as thus given indicate that both the pedestrian and the driver entered the intersection by the direction of a traffic signal, yet the rule of law declared by the case as to the duty of the driver toward the pedestrian, is not limited to one that is lawfully in the interesction. The court, in the second syllabus, declares the law as follows:
“A signal by automatic light or traffic policeman to proceed does *499 not absolve the driver of a motor vehicle from the duty to exercise ordinary care for the safety of the pedestrians at a known street crossing. The care and caution to be exercised as to those in the intersection must be commensurate with the existing danger of collision and consequent injury.”
On page 143, the court in distinguishing. this cáse from the Bloomgren case, supra, said:
“It is only by reason of the extreme language used in the statutes under consideration (to-wit §6310-28a) in the case of Morris v Bloomgren, 127 Oh St 147, that it was held that an absolute and unequivocal right of way was possessed by a vehicle approaching a crossing from the right, qualified only by the requirements that in proceeding uninterruptedly it must proceed in a lawful manner. That statute has no application here.”
If the interpretation of those statutes had no application in the case of Martinovich v Jones, supra, it is manifest that it has no application in the instant case where the passenger, Mary Sawyer, is seeking to hold the carrier that was transporting her. Her rights are to be determined by the common law and not by a statute regulating the conduct of an opposing vehicle at an intersection.
So it is that the circumstances of the instant case even more clearly impose upon the defendant, The Yellow Cab Company, the duty of exercising the proper degree of' care for the plaintiff, because here the plaintiff is a passenger in the vehicle of the defendant, and if by the exercise of the highest degree of care consistent with the operation of the vehicle the collision and injury to the plaintiff could have been avoided, it was the defendant’s duty to do so.
It is true that the driver of defendant’s taxicab had the right to assume that others would not violate the' rule of the road and would yield to him the right of way. But if there is any evidence in the record which if true would tend to establish that the unlawful conduct of the defendant, Montgomery, should have been observed by one in the exercise of the highest degree of practicable care, in time so that in the exercise of such care he could havei avoided the collision and failed to. do so, such evidence should be submitted to the jury under proper instructions from the court. I conclude that there is such evidence in the record.
In support of this conclusion, reference is made to the testimony of Dr. Douglass who testified that he saw the defendant Montgomery’s car first when its distance away from the cab was beyond the length of the court room (which was stipulated to be forty-four feet) and at that time the cab was just coming to the intersection. Other evidence in the record is to the effect that the Montgomery car was moving rapidly; that the pavement was wet and slippery and that Montgomery drove to the left of the safety zone which zone extends a short distance to the east of East 18th Street. The cab driver in making his report to the police, said:
“I was operating a Yellow Cab south on East 18th Street at about ten (10) miles per hour. The traffic signal was green for north and south traffic at Euclid, so I pulled the cab over to the right to make a left turn and go east on Euclid. While pulling to the right to make the turn, I noticed a car travelling west on Euclid Avenue at a high rate of speed and was in the westbound car track and when approaching East 18th Street this car *500 went to the left of the permanent safety zone. I figured this car was going too fast to stop, due to the wet pavement, so I pulled up a little farther toward the south curb and this westbound auto struck the left rear wheel and fender with the left front part of the car.”
' This evidence tends to establish factual circumstances from which it might reasonably be determined that even though the taxicab driver had the absolute right of way yet, in the exercise of the highest degree of probable care for the safety of his passenger, it would be negligence for him to drive his cab in front of such apparent danger, or that such danger could have been avoided when discovered by the exercise of the highest degree of practicable care.
The verdict of the jury should, therefore, have been permitted to stand.